UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARJIT SINGH, on behalf of himself and all other persons similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BNO SERVICE STATION, LLC, a/k/a EXXON et al.,<br><br>*Defendants*. | No. 23-cv-04196 (MEF)(SDA)<br><br>**OPINION and ORDER** |

**Table of Contents**

I. **Background**
   **A. The Allegations**
   **B. The Lawsuit**
   **C. Procedural History**
   **D. The Court's Approach**

II. **Liability**
   **A. Jurisdiction**
      **1. Subject-Matter Jurisdiction**
      **2. Personal Jurisdiction**
   **B. Service**
   **C. The Plaintiff's Claims**
      **1. Overtime**
      **2. Minimum Wage**
   **D. The Equities**
   **E. Conclusion**

III. **Remedies**

**IV.     Conclusion**

\*   \*   \*

A gas station attendant sued his former employer, mainly for unpaid overtime.

The Clerk of Court entered default, and the attendant has now moved for default judgment.

The motion is granted in part and denied in part.

\*   \*   \*

**I.     Background**

    **A.     The Allegations**

The relevant allegations for now are as follows.

A man worked as an attendant at a New Jersey gas station. See Amended Complaint (ECF 7) ("Complaint") ¶¶ 6, 10-11.

He "routinely worked approximately seventy . . . hours per workweek." Id. ¶ 26.

But rather than receiving an overtime rate for the hours he worked past the forty-hours-per-week mark, the attendant was paid a lower wage for those hours. See id. ¶¶ 27-28.

Additionally, after the attendant was injured on the job, his employer directed him to rest up at home for a week. See id. ¶¶ 29-30. But when he tried to return to work, he learned he had been fired. See id. ¶¶ 31-33.

    **B.     The Lawsuit**

In light of the above, the gas station attendant,[1] referred to from here as "the Plaintiff," brought this lawsuit.

He sued the company[2] he used to work for, and two people said to be the company's owners and/or managers.[3] See id. ¶¶ 13-20. Collectively, they are called "the Defendants" from here.

---

[1]   Harjit Singh.

[2]   BNO Service Station, LLC, a/k/a Exxon.

[3]   Neslihan Kipge and Ugar Olgun.

2

The Plaintiff pressed one federal claim, under the Fair Labor Standards Act ("FLSA").  See id. ¶¶ 37-41.

And he brought four state claims.

These are wage-underpayment claims under the New Jersey Wage and Hour Law ("NJWHL"), see id. ¶¶ 42-45, 50-55, and the New Jersey Wage Payment Law ("NJWPL").  See id. ¶¶ 46-49.

And these are wrongful termination claims, under the New Jersey Workers' Compensation Act, see id. ¶¶ 56-59, and under the common law, as interpreted by the New Jersey Supreme Court in Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980).  See Complaint ¶¶ 60-64.

### C.  Procedural History

The Defendants have not appeared, and the Clerk of Court has filed an entry of default.  See Clerk's Entry of Default (March 26, 2024); see generally Fed. R. Civ. P. 55(a).

The Plaintiff now moves for default judgment.

### D.  The Court's Approach

The Court's analysis is in two parts.

First, the Court considers whether to grant the default judgment motion as to the Defendants' liability on the FLSA and NJWHL claims.[4]  See Part II.

And second, the Court determines whether to grant the default judgment motion as to the remedies the Plaintiff seeks.  See Part III.

## II.  Liability

To assess a default judgment motion, four issues must be taken up: (1) jurisdiction; (2) service; (3) the merits of a plaintiff's claim; and (4) the equities.  See Baymont Franchise

---

[4] Two things.  First, there is no need to separately address the Plaintiff's NJWPL claim.  The default judgment motion would be resolved the same way regardless of whether it is or is not considered.  Second, the Plaintiff's wrongful termination claims, under the New Jersey Workers' Compensation Act and state common law, are addressed in Part II.A.1.

3

Sys., Inc. v. Narnarayandev, LLC, 348 F.R.D. 220, 227-31 (D.N.J. 2024).

Move through these here.

### A. Jurisdiction

#### 1. Subject-Matter Jurisdiction

As to the FLSA claim, subject-matter jurisdiction is straightforward. It is supplied by the federal question statute, 28 U.S.C. § 1331.

* * *

As to the various New Jersey state law claims, see Part I.B., the Plaintiff invokes the supplemental jurisdiction statute, 28 U.S.C. § 1367. See Complaint ¶ 4.[5]

The supplemental jurisdiction statute supplies subject-matter jurisdiction over the Plaintiff's NJWHL claims. See id. ¶¶ 42-45, 50-55. The reason: those are based on the same allegations of underpaid wages as the Plaintiff's federal FLSA claim. See 28 U.S.C. § 1367(a); Ajanel v. JC HVAC LLC, 2025 WL 1671318, at *1 (D.N.J. June 12, 2025).

Does the Court have supplemental jurisdiction over the claims for wrongful termination under New Jersey common law and the New Jersey Workers' Compensation Act?

The relevant statute provides that the Court "shall have supplemental jurisdiction over all . . . claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

This generally means that supplemental jurisdiction can be exercised over state law claims if they share a "common nucleus of operative fact" with the federal claim that is on the table. 13D Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3567 (3d ed. 2025) (quoting United Mine Workers of Am.

---

[5] The Plaintiff also cites the diversity statute. But that statute requires some of the parties be "citizens of different States." 28 U.S.C. § 1332(a)(1). And all the parties here are said to be from New Jersey. See Complaint ¶¶ 9, 11, 13, 17.

v. Gibbs, 383 U.S. 715, 725 (1966)); see also, e.g., De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 307-08 (3d Cir. 2003).

Do the Plaintiff's state law wrongful termination claims share a "common nucleus of operative fact" with his federal FLSA claim?

Not on the allegations here.

The wrongful termination claims are about getting fired for seeking medical leave. The FLSA claim is about not getting paid overtime. These are different, one from the next.

And while the claims grow out of the same workplace, and that makes for some overlap, "the fact that claims arise from . . . [the same] employment relationship will not necessarily mean that they are sufficiently related to support supplemental jurisdiction." 13D Fed. Prac. & Proc. Juris. § 3567.1.

To see the point, look to the Third Circuit's decision in Lyon v. Whisman, 45 F.3d 758 (3d Cir. 1995).

There, the plaintiff brought three claims: an unpaid overtime claim under the FLSA, and two Delaware state law claims based on her former employer's refusal to pay certain bonuses. See id. at 758-59.

The Third Circuit held that there was "an insufficient nexus between [the plaintiff's] federal FLSA claim and her Delaware claims to justify supplemental jurisdiction over the latter." Id. at 762.

The only commonality, the Third Circuit said, was that all three claims were based on the employer-employee relationship between the parties.[6] See id. But whereas the plaintiff's "FLSA claim involved very narrow, well-defined factual issues about hours worked during particular weeks[,] [t]he facts relevant to her state law contract and tort claims . . . were quite distinct." Id. at 763.

So too here.

The Plaintiff's FLSA claim is based solely on the Defendants' alleged failure to pay him at the required overtime rate. See Complaint ¶¶ 37-41. His wrongful termination claims require distinct factual inquiries that are unrelated to his pay rate.

---

[6] And that is the only commonality the Plaintiff identifies here. See Plaintiff's Motion for Final Default Judgment (ECF 14) at 3.

5

Indeed, those factual inquiries are further afield than the unpaid-bonus inquiry that would have been required under Delaware law in Lyon.

Lyon is controlling. There is no supplemental jurisdiction over the Plaintiff's wrongful termination claims (Count V and Count VI). Those claims cannot be taken up here.

### 2. Personal Jurisdiction

Now to personal jurisdiction. See Baymont, 348 F.R.D. at 227-28.

The gas-station Defendant is a limited liability company, with its principal place of business alleged to be in New Jersey. See Complaint ¶ 11.

And that is a "paradigm bas[is] for general [personal] jurisdiction," Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (cleaned up), including for limited liability companies. See Ajanel, 2025 WL 1671318, at *1-2 (D.N.J. June 12, 2025) (collecting cases).

There is personal jurisdiction over the individual Defendants, too.

Both are alleged to be New Jersey residents. See Complaint ¶¶ 13, 17. The Court may exercise general jurisdiction over them. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011).

### B. Service

Next: were the Defendants properly served? See Baymont, 348 F.R.D. at 232.

Yes. See ECF 8; see generally Fed. R. Civ. P. 4(h) (describing the legal standards that apply here).

### C. The Plaintiff's Claims

Turn now to the third question: are the Plaintiff's claims "solid?" See Baymont, 348 F.R.D. at 228.

### 1. Overtime

Start with his FLSA claim.

The law here in a nutshell:

6

"[The] FLSA establishes the general rule that 'no employer shall employ any of his employees . . . for a workweek of longer than forty hours unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which he is employed.'" Sander v. Light Action, Inc., 525 F. App'x 147, 150 (3d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).

And "[t]he elements of an FLSA claim are as follows: (1) the plaintiff was an 'employee,' as defined by the FLSA; (2) the defendant was 'engaged in commerce,' as defined by the FLSA; and (3) the plaintiff was not paid overtime compensation for hours worked in excess of forty in a given week." Ajanel, 2025 WL 1671318, at *2 (cleaned up).

Go through each of these elements to see if the FLSA claim is "solid."

\*   \*   \*

First, under the FLSA, an "employee" is "any individual employed by an employer."  29 U.S.C. § 203(e)(1).

An "[e]mployer includes any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. § 203(d) (cleaned up).  And to "employ" means "to suffer or permit to work." Id. § 203(g).

"[T]he FLSA defines employer expansively, and with striking breadth." In re Enter. Rent-A-Car Wage & Hour Emp't Prac. Litig., 683 F.3d 462, 467 (3d Cir. 2012) (cleaned up).

And the Third Circuit has held that "[a]side from the corporate entity itself, a company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA." Thompson v. Real Est. Mortg. Network, 748 F.3d 142, 153 (3d Cir. 2014).

The Plaintiff alleges that he "was employed by [the] Defendants as a non-exempt gas station attendant." Complaint ¶ 10; see also id. ¶ 23.

And as to both individual Defendants, he says that they:

> [M]anaged the day to day operations, controlled the employee pay practices, and had the power to change same, as well as the power to hire and fire employees, set their wages, and otherwise control the terms of their employment.

Id. ¶¶ 16, 20.

7

These allegations are more than enough to establish the Plaintiff was an "employee" under the FLSA.  See Ajanel, 2025 WL 1671318, at *3 (collecting cases).

\* \* \*

Second, has the Plaintiff alleged that the Defendants were "engaged in commerce?"  29 U.S.C. § 207(a)(1).

Yes.  See Complaint ¶ 7.

\* \* \*

Third and finally, has the Plaintiff alleged that he was not paid at the overtime rate?  See 29 U.S.C. § 207(a)(1).

This requires him to "sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours."  Davis v. Abington Memorial Hosp., 765 F.3d 236, 243 (3d Cir. 2014) (cleaned up).

For example, "a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours . . . she worked during one or more of those forty-hour weeks, would suffice."  Id.

The Plaintiff alleges that he "routinely worked seven . . . days per workweek," Complaint ¶ 25, for "approximately seventy . . . hours per workweek."  Id. ¶ 26.

But the Defendants did not pay him at the overtime rate --- instead, the Plaintiff says, they paid him a lower wage for overtime hours.  See id. ¶¶ 27-28.

Those allegations clear the bar.

\* \* \*

In light of the above, the Plaintiff has made out a "solid," Baymont, 348 F.R.D. at 232, FLSA claim.

\* \* \*

Recall that the Plaintiff also brought a state law claim for unpaid overtime under the NJWHL.  See Part I.B.

"The NJWHL closely mirrors the FLSA.  So the fact that the FLSA box is checked means that the NJWHL box is checked here, too."  Ajanel, 2025 WL 1671318, at *3 (collecting cases).

8

The Plaintiff's FLSA and NJWHL claims as to overtime compensation are solid enough to warrant default judgment. See Baymont, 348 F.R.D. at 232.

### 2. Minimum Wage

The Plaintiff has also made a claim for unpaid minimum wage under the NJWHL. See Complaint ¶¶ 50-55.

The statute set a minimum wage at the following levels for the years relevant here:

- 2021: $12.00 per hour
- 2022: $13.00 per hour
- 2023: $14.13 per hour

See N.J.S.A. 34:11-56a4; see also New Jersey's Minimum Wage to Increase to $14.13/Hour for Most Employees on Jan. 1, N.J. Dep't of Lab. & Workforce Dev., https://www.nj.gov/labor/lwdhome/press/2022/20220920_minimumwage.shtml (Sept. 20, 2022).

And under the statute, "any employee [who] is paid by an employer less than the minimum fair wage . . . may recover in a civil action the full amount of that minimum wage less any amount actually paid to him or her by the employer." N.J.S.A. 34:11-56a25.

The Court has already determined that the Plaintiff was an "employee." See Part II.C.I.

Has the Plaintiff alleged that the Defendants failed to pay him at a rate meeting or exceeding New Jersey's minimum wage?

Yes. See Complaint ¶ 27; see also Plaintiff's Affidavit of Damages (ECF 14-1) ¶ 6 (declaring that, during the relevant period, his overall hourly pay rate amounted to $11.71).

The Plaintiff's NJWHL claim works. See Baymont, 348 F.R.D. at 232.

### D. The Equities

Next, the Court looks to the overall equities of the case by answering three questions. See Baymont, 348 F.R.D. at 231.

First, will the Plaintiff be prejudiced if default judgment is not entered? See id.

9

Yes.

The Court makes the common-sense assumption that the Defendants' failure to respond to the lawsuit means that the Plaintiff has no other realistic way to get paid what he is owed. That counts as prejudice. See Baymont, 348 F.R.D. at 232-33.

Second, does the defendant have an "obviously in-play litigable defense[]"? Id. at 234 (cleaned up).

In this case: no.

For example, the FLSA includes a limitations period of two years. 29 U.S.C. § 255(a). The Plaintiff's original complaint was filed on August 4, 2023. See ECF 1 at 11. And at least some of the alleged underpayment falls within the limitations period of August 4, 2023, to August 4, 2021. See Complaint ¶ 10 (alleging that the Plaintiff worked for the Defendants from February 2021 to August 2023).

And the limitations period for a NJWHL claim is six years. See N.J.S.A. 34:11-56a25.1. All of the alleged underpayment falls within that window.

Third: would default be the result of a defendant's "culpable conduct"? See Baymont, 348 F.R.D. at 235.

Yes.

The Defendants were served with the original complaint over nineteen months ago. See ECF 3. And they were served again, with the amended complaint, more than sixteen months ago. See ECF 8. They have not appeared. The Clerk of Court twice placed an entry of default on the public docket --- once as to the original complaint, and once as to the amended complaint. See Clerk's Entry of Default (January 2, 2024); Clerk's Entry of Default (March 26, 2024). And copies of the motion for default judgment were mailed to the Defendants when the motion was filed. See Motion for Default Judgment at 16.

The Defendants have repeatedly been given a "heads-up." Baymont, 348 F.R.D. at 227. But they have opted not to respond.

What is more, the Defendants are New Jersey-based. See Complaint ¶¶ 11, 13, 17. They are all "at home" here. Daimler, 571 U.S. at 137.

And yet they have repeatedly not responded when the Court calls. That is "culpable conduct." Baymont, 348 F.R.D. at 235.

10

### E. Conclusion

As to the Plaintiff's claims under the FLSA and NJWHL, the four relevant inquiries --- jurisdiction, service, solidness of the claims, and the equities --- all point in the same direction. See Part II.A to Part II.D.

The Court will enter default judgment for the Plaintiff as to liability on those claims.

## III. Remedies

As to the FLSA and NJWHL claims laid out above, the Plaintiff seeks several remedies.

As to damages, he seeks unpaid minimum wages under the NJWHL, unpaid overtime wages under the FLSA and NJWHL, and liquidated damages under those statutes. See Motion for Default Judgment at 10-12.

He also seeks attorneys' fees and costs. See id. at 14-15.

"[A] court may grant default judgment as to damages if damages are for a sum certain or a sum that can be made certain by computation." Baymont, 348 F.R.D. at 235.

The Plaintiff has provided calculations for the damages he seeks. See Plaintiff's Affidavit of Damages ¶¶ 6-9. But there are issues with them that make it difficult for the Court to determine the "sum certain" at play here.

First, the Plaintiff uses the wrong New Jersey minimum wage for calendar year 2023. He uses $14.00. See id. ¶ 7. But in 2023, New Jersey's minimum wage was $14.13. See N.J.S.A. 34:11-56a4; New Jersey's Minimum Wage to Increase to $14.13/Hour for Most Employees on Jan. 1, N.J. Dep't of Lab. & Workforce Dev., https://www.nj.gov/labor/lwdhome/press/2022/20220920_minimumwage.shtml (Sept. 20, 2022).

Second, the Plaintiff also double counts much of his potential recovery. The core of his claims is the allegation that, for hours he worked past the forty-hour-per-week mark, he was only paid $10 per hour, rather than the appropriate overtime rate. See Plaintiff's Affidavit of Damages ¶ 5. His calculations suggest that the Defendants now owe him both unpaid overtime and unpaid minimum wage based on that figure --- but that would

incorrectly double his recovery, at least for some of the hours he worked.

Finally, the Plaintiff does not grapple with the FLSA's limitations period, see Part II.D, and how it might affect his recovery under that statute. See Ajanel, 2025 WL 1671318, at *4-5.

Given the above, the Court cannot now readily calculate a "sum certain."

The Court will allow the Plaintiff to reopen his motion and submit revised calculations as to damages.

The request for attorney's fees and costs will also be denied for now, so that the request may be updated based on additional fees and costs incurred if the Plaintiff chooses to revise his calculations.

## IV. Conclusion

As to liability, the motion for default judgment is granted as to the Plaintiff's FLSA and NJWHL claims, and denied as to the Plaintiff's statutory and common law claims for wrongful termination.

As to remedies, the motion is denied without prejudice. The Plaintiff may reopen the motion by submitting accurate and easy-to-follow FLSA and NJWHL damages calculations, plus any updated attorneys' fees and costs information --- provided he does so on or before July 30.

IT IS on this 10th day of July, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

12